UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1: 16-CV-00072-HBB

PATRICIA RIVERA                                                                    PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the *pro se* complaint (DN 1) of Patricia Rivera ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff, proceeding *pro se* (DN 23), and Defendant (DN 24) have filed a Fact and Law Summary. For the reasons that follow, judgment is granted for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered November 15, 2016 (DN 18), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance benefits on January 19, 2012 (Tr. 46, 154). Plaintiff alleged that she became disabled on August 31, 2011 as a result of the following conditions: fibromyalgia, partial hearing loss, migraines, brain aneurysm, sleep apnea, asthma, cataracts, pain in the left leg and hip, gallstones, and tinnitus (Tr. 169). Administrative Law Judge Nancy Lisewski ("ALJ") conducted a hearing on April 11, 2013 in Philadelphia, Pennsylvania (Tr. 46). Plaintiff was present and represented by attorney Ayala O'Brien (Id.). Also present and testifying was Ms. Sherry L. Kristal-Turetzky (Id.).

In a decision dated May 1, 2013 the ALJ noted that Plaintiff's insured status under the Social Security Act expired on September 30, 2012 (Tr. 48, 54). The ALJ evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 46-54). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 31, 2011, the alleged onset date (Tr. 48). At the second step, the ALJ determined that Plaintiff has the following severe impairments: migraine headaches, fibromyalgia, obesity, mild sleep apnea, Achilles tendinitis, and a foot impairment including a fractured toe (Id.). Additionally, the ALJ determined that Plaintiff failed to demonstrate that her alleged hearing loss is a medically determinable impairment (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that, through the date last insured, Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she cannot have concentrated exposure to loud noise (Tr. 51). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is capable of performing her past relevant work as a

cashier (Tr. 53). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 31, 2011 through September 30, 2012, the date last insured (Tr. 54).

Plaintiff filed a request for the Appeals Council to review the ALJ's decision (Tr. 26). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 22-24).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 22-24). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the

Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Challenged Findings

Plaintiff asks the Court to reverse the final decision of the Commissioner and award her benefits (DN 23). However, her fact and law summary does not set forth challenges to specific enumerated findings within the final decision (Id.). For example, the fact and law summary does not announce that Plaintiff is challenging Finding No. 2 (Id. PageID # 618-19). Yet, it does take issue with the ALJ's comments about evidence pertaining to the severity of her purported hearing loss (Id.). Therefore, the undersigned will attempt to connect each of Plaintiff's arguments to a the specific enumerated finding that she appears to be challenging.

A.

Plaintiff appears to be challenging Finding No. 3 to the extent that the ALJ determined her hearing loss is not a medically determinable impairment (DN 23 PageID # 618-19). Plaintiff also seems to challenge Finding No. 5 with regard to the ALJ's observations about her hearing (Id.). In pertinent part the ALJ's decision reads:

> The claimant also alleges a hearing loss. Dr. Stefan W. Schulz, noted on March 21, 2012, that a hearing test revealed "mild" hearing loss in both the ears (Exhibit 5F/2). However, there are no audiology reports in the file. Consequently, I find it to be a not medically determinable impairment.
>
> . . .

> In addition, as noted by the Field Office, I found that the claimant had no issues hearing me at the hearing. Despite her alleged partial hearing loss, she did not ask me to speak up when I spoke softly, and she did not ask me to repeat myself once during the hearing.

(Tr. 48, 52). Plaintiff claims that the records of Dr. Kevin Leahy, her ENT, indicate she has severe hearing loss (DN 23 PageID # 618-19). However, she concedes that Dr. Leahy's records are not part of the administrative record (Id.). Plaintiff blames the ALJ for failing to ask her to review the administrative record to determine whether there were any missing medical records (Id.). Further, Plaintiff attempts to discount the ALJ's observations about her hearing by asserting that the ALJ spoke into a microphone throughout the hearing and there was no other noise interference in the small hearing room (Id.).

At the second step in the sequential evaluation process a claimant must demonstrate she has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show she suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. § 404.1509) and "significantly limits" her ability to do one or more basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863.

To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. Social Security Ruling 96-4p, 1996 WL 374187, at *1; Social Security Ruling 96-3p, 1996 WL 374181, at *2. Thus, symptoms and subjective complaints alone are not sufficient to establish the existence of a "medically determinable" physical or mental impairment. Social Security Ruling 96-4p, 1996 WL 374187, at *1.

6

This Court's review is limited to the decision of the ALJ and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline, 96 F.3d at 148; Cotton, 2 F.3d at 695-696. The only medical evidence in the administrative record that refers to Plaintiff's hearing is a comment in a treatment note prepared by Dr. Schulz (Tr. 260). The comment recognizes that Plaintiff is still treating with an ENT and that testing, apparently performed by the ENT, revealed mild hearing loss in both ears (Id.). The Court cannot consider Plaintiff's bare assertions about Dr. Leahy's medical records because those medical records were not in the administrative record at the time the ALJ rendered the decision. In sum, the ALJ's conclusions in Finding No. 3 about Plaintiff's hearing are supported by substantial evidence in the record.

Finding No. 5 sets forth the ALJ's residual functional capacity assessment of Plaintiff. In making the residual functional capacity finding, the ALJ is required to consider Plaintiff's subjective allegations and make credibility findings. *See* 20 C.F.R. § 404.1529; Social Security Ruling 96-7p. Plaintiff merely disagrees with the ALJ's comments addressing the credibility of her allegations about the severity of her hearing loss (Tr. 52). The ALJ's comments are the product of reasonable observations regarding whether Plaintiff exhibited any difficulty hearing during the administrative proceeding. Thus, substantial evidence supports the ALJ's conclusions in Finding No. 5 concerning the credibility of Plaintiff's subjective statements about her hearing loss.

B.

Next, Plaintiff appears to be challenging Finding No. 5 with regard to the ALJ's conclusions about her migraines (DN 23 PageID # 619-20). However, all Plaintiff offers are general assertions about her difficulties and the types of treatment she has received to address her

7

migraines (Id.). After carefully reviewing the medical evidence in the administrative record, the undersigned concludes that substantial evidence in the record supports the ALJ's residual functional capacity findings with regard to Plaintiff's migraines (Tr. 49, 52-53).

C.

Next, Plaintiff appears to be challenging Finding No. 5 with regard to the ALJ's conclusions about her fibromyalgia (DN 23 PageID # 620, 621-25). However, Plaintiff makes general assertions about her reasons for changing doctors and that Dr. Schulz diagnosed fibromyalgia (Id.).

In Finding No. 3, the ALJ found that Plaintiff's fibromyalgia was a severe impairment within the meaning of the regulations (Tr. 48). In Finding No. 4, the ALJ made the following analysis:

> For her fibromyalgia, I have considered the American College of Rheumatology guidelines, which include tender points, [sic] are specific sites on the body that cause pain when pressed. The pain may spread when a tender point is pressed and cause pain in a larger area (for example, down the leg, arm, or back).
>
> There are 9 pairs of tender points. Each pair has one point on each side of the body, for a total of 18 points. These pairs are located:
>
> 1. At the back of the neck behind the ear, where the neck muscles attached to the base of the skull.
> 2. About halfway between the base of the neck and the tip of the shoulder.
> 3. At the spot where the back muscles attached to the shoulder blade.
> 4. On the front of the neck above the collarbone.
> 5. Just to the right and left of the breastbone (Stern) about 2 in. (5.08 cm) below the collarbone.
> 6. On each forearm just below and to the outside of the crease of the elbow.
> 7. Just above and the outside of each buttock.

> 8. On the outer upper leg just behind the bony part of the hip (this point is easier to find when standing).
> 9. On the inside of each knee.
>
> For a clear diagnosis of fibromyalgia, according to the American College of Rheumatology guidelines, a person must have pain at 11 or more of the 18 tender points. In practice, however, many people with fibromyalgia have fewer than 11 tender points.
>
> On January 18, 2012, the claimant reported that she had chronic pain for the past 5 years and had been diagnosed with fibromyalgia in 2011. She was treating at Pennsylvania Hospital but the doctor treating her (and the one who diagnosed her) left, and her new doctor told her that she did not have fibromyalgia. She then sought treatment at Drexel University's College of Medicine. She reported symptoms such as pain in her entire body that is worse at night. She needs her husband's help to get out of bed, at times. She is followed by a rheumatologist, and has taken Cymbalta, Flexeril, and Lyrica for this condition. Although she also reported hip and knee pain, seemingly unrelated to the fibromyalgia pain, x-rays were "normal" (Exhibit 4F, pgs 7 and 8; Exhibit 13F).

(Tr. 49). The ALJ provided a thorough and accurate summary of the January 18, 2012 treatment note prepared by Drs. Bhatti and Russell at Drexel University College of Medicine (Tr. 254-58).

Finding No. 5 sets forth the ALJ's assessment of Plaintiff's residual functional capacity. In making that assessment, the ALJ assigned weight to the medical source statements in the record and made credibility findings regarding Plaintiff's subjective allegations. *See* 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p. In pertinent part, the ALJ's decision reads as follows:

> Although alleging disability because of her impairments, she admitted being able to perform daily living activities during a February 29, 2012 office visit at Drexel (Exhibit 4F/1). During an October 2011, office visit, Dr. Schulz noted that the claimant was "weak" on exam, but stated that it felt "effort related" and her strength was "inconsistent". He stated that he could not understand the fairly rapid fluctuations in the week as (Exhibit 5F/16). Despite her allegations of fatigue and muscle pain, and as well is [sic]

9

> struggling with daily activities, the claimant reported she prepares her own meals daily (Exhibit 4E).
>
> As for the opinion evidence, Dr. Dr. Schulz's treatment notes are conflicting. He states that the claimant has a "history of suggested fibromyalgia", [sic] He notes that she had pain in her arms, shoulders, legs, but without swelling and actually indicated "more muscular". On the muscle skeletal examination of her joints, he notes "no pain, no swelling, no fluid, and no OA nodes." [sic] but then indicated "pain in diffuse tender points and also non-tender points" (Exhibits 5F and 16F). On a fibromyalgia radical source statement, the doctor checked off symptoms including multiple tender points and muscle weakness, which contradicts his notes at Exhibits 5F and 6F) [sic]. This opinion is not persuasive. Dr. Schulz's opinion that the claimant would be limited to lifting/carrying less than 10 pounds; standing/walking less than 2 hours; sitting for 2 hours; would need a sit/stand option; would not be able to reach or push/pull; and needed to avoid concentrated exposure to temperature extremes and humidity, and needed to avoid all exposure to pulmonary irritants is not given any weight as this opinion is not supported by his progress notes throughout the record (Exhibit 9F). On a later medical source statement, he changed all the environmental restrictions to "avoid all exposure", but still did not offer a narrative report to support those findings (Exhibit 18F).

(Tr. 52-53). The ALJ's credibility assessment is supported by substantial evidence in the record and comports with applicable law. *See* 20 C.F.R. § 404.1529(a) and (c); Social Security Ruling 96-7p; <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ's assignment of weight to the medical opinions of Dr. Schulz, a treating source, is also supported by substantial evidence in the record and comports with applicable law. 20 C.F.R. § 404.1527(c)(1); <u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 375-76 (6th Cir. 2013).

D.

Next, Plaintiff appears to be challenging Finding No. 5 with regard to the ALJ's conclusions about her Achilles tendinitis, fractured toe, and use of a cane (DN 23 PageID # 620-21). The ALJ's analysis in Finding No. 4 reads as follows:

10

> The claimant fractured her left toe and underwent a surgical procedure to repair the injury in March 2010. In July 2011, she returned to Hahnemann with complaints of pain and discomfort in her left hallux, particularly with weight-bearing/ambulation. X-rays were taken that day and an injection into the left hallux was performed. The claimant was given range of motion exercises to do, given anti-inflammatories, and advised to return the following month. She did not return until September 27, 2011, at which time x-rays taken showed that her toe was stable with good alignment and positioning. She had evidence of degenerative joint disease and tenosynovities and tendinitis. She refused another injection. At her last visit on October 2012, she again refused another injection. The doctor discussed orthotic therapy, both over-the-counter and custom, and the claimant opted for over-the-counter. She was given a prescription for physical therapy (Exhibit 12F). That is the extent of the medical evidence from Dr. Schapiro of the Foot and Ankle Center of Philadelphia. The claimant participated in physical therapy for her heel pain at Nova Care from December 2012 through March 2013 (Exhibit 17F).

(Tr. 50-51). Contrary to Plaintiff's assertion, the ALJ provided a thorough and accurate summary of the medical evidence in the administrative record.

In relevant part, Plaintiff's testimony during the administrative hearing reads as follows:

> Q    I see that you've got a cane with you today.
>
> A    Yes.
>
> Q    did a doctor prescribe that?
>
> A    They prescribed it when I broke my toe, but my rheumatologist has told me to use it when I needed.
>
> Q    Okay. So how often is that?
>
> A    Pretty much any time I leave the house.

(Tr. 73).

Finding No. 5 sets forth the ALJ's assessment of Plaintiff's residual functional capacity. In making the residual functional capacity finding the ALJ is required to consider Plaintiff's

subjective allegations and make credibility findings. *See* 20 C.F.R. § 404.1529; Social Security Ruling 96-7p. In pertinent part, the ALJ's decision reads as follows:

> In terms of the claimant's allegations, it is noted that the claimant brought a cane with her to the hearing, but reported it was for her broken toe. She stated that her treating rheumatologist told her she could use it. It appeared to me that she was carrying it, but not using it.

(Tr. 52). Plaintiff merely disagrees with the ALJ's comments addressing the credibility of her allegations about her use of a cane (Tr. 52). Further, Plaintiff's own testimony during the administrative hearing undercuts her current assertion that she used a cane on the day of the hearing because of an Achilles tendon tear. The ALJ's comments are the product of reasonable observations regarding Plaintiff's use of the cane and her testimony regarding why she was using the cane. Thus, substantial evidence supports the ALJ's conclusions in Finding No. 5 concerning the credibility of Plaintiff's subjective statements about her use of a cane.

E.

Next, Plaintiff appears to be challenging Finding No. 5 with regard to the ALJ's conclusions about her depression (DN 23 PageID # 622-623). In pertinent part the ALJ's decision reads as follows:

> Dr. Walter Slakespeer completed a depression and anxiety questionnaire on September 24, 2012, indicating "market" functional limitations. The opinion is given no weight for a number of reasons. Firstly, the claimant is not alleging a mental impairment. Secondly, it is a check-off form with no rationale or basis of support (20 CFR 404.1527, 20 CFR 416.927). As a result, the medical source statement from Dr. Slakespeer [sic] nothing more than a check-off report. A check-off form without a narrative report is weak evidence at best (<u>Mason v. Shalala</u>, 944 F.2. 1058 (3rd Cir. 1993)). Further, <u>Brewster v. Heckler,</u> ( [sic] 786 F.2d 581, [sic] 3rd Cir. 1986) holds that the reliability of reports unaccompanied by thorough written reports is suspect. Lastly, it does not appear from the record that Dr. Slakespeer is a mental

12

health specialist, and therefore, not qualified to offer an opinion on mental health issues. In an office note dated September 24, 2012, the doctor noted that the claimant was "currently doing better" (Exhibit 14F/1).

(Tr. 53). Plaintiff merely disagrees with the ALJ's comments explaining the weight accorded to this opinion by Dr. Slakespeer. The ALJ's assignment of weight to the opinion of Dr. Slakespeer is supported by substantial evidence in the record and comports with applicable law. 20 C.F.R. § 404.1527(c)(1); <u>Gayheart</u>, 710 F.3d at 375-76.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies: Patricia Rivera, *pro se*
Counsel